IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

JOSEPH KUROWSKI,

                             Defendant.
_____

**DEFENDANT'S STATEMENT WITH RESPECT TO SENTENCING FACTORS; REQUEST FOR SENTENCE OUTSIDE THE GUIDELINE RANGE**

Docket no. 16-CR-94-LJV-MJR

# I.    INTRODUCTION

Defendant, Joseph Kurowski, hereby files this statement with respect to sentencing factors, and requests a sentence outside of the Guidelines range. For purposes herein the Pre-Sentence Report prepared by Lindsay Maza, U.S. Probation Officer, dated January 27, 2016, shall be referred to as "The Report." Please note all Exhibits referred to will be filed in a separate document.

The basis for the above requests are:

      A.      Defendant's age, background, and lack of criminal record; and,

      B.      Mr. Kurowski's mental health diagnosis and treatment.

All of our requests are modest and specifically tailored to the facts of defendant's case.

We ask that the court look beyond the mere convictions reflected in the Report and consider Mr. Kurowski's specific, personal background. The Defendant requests a sentence that **accurately** reflects the nature and circumstances of Mr. Kurowski's offense and his history and characteristics; and is "sufficient, but not greater than necessary" to serve the purposes of sentencing set forth at 18 USC 3553(a)(2).

## II. PROCEDURAL POSTURE

Mr. Kurowski is scheduled to be sentenced on March 7, 2017, at 9:00 am.

The procedural posture of Mr. Kurowski's case is laid out in the Report on pages one and two.

## III. PERSONAL AND CRIMINAL HISTORY

### A:     DEFENDANT'S AGE, BACKGROUND, & LACK OF CRIMINAL RECORD

Mr. Kurowski is now only 24 years old. At the time of the offense, he was only <u>22 years old!</u>

The Report, at page 18, gives a general outline of the Defendant's personal and family history, the offense along with his prognosis and treatment. To further, expound, we offer the following information:

Mr. Kurowski and his mother, Susan Kurowski, give great detail of Joseph's background in their letters to the Court. Mr. Kurowski is one of three children. His parents are married and reside together. Mr. Kurowski resides at home with his parents and his siblings (letters attached as Exhibit A).

It should be noted that Mr. Kurowski is chronologically eight years older than his next oldest sibling. Mr. Kurowski's mother details Mr. Kurowski's childhood, referring to him as an "only child" for eight years.

Mr. Kurowski and his mother both intimately describe Mr. Kurowski's childhood relationship with his parents in their letters. From both letters, and discussions with the Defendant Mr. Kurowski himself, it would appear that Mr. Kurowski was an overly sensitive and anxious young man. He seemed to have a strained relationship with his father due to his emotional intensity.

2

Mrs. Kurowski alludes to the fact the Joseph was diagnosed with Trichotillomania as a child, a condition wherein the individual pulls his own hair out of his scalp when feeling anxious and/or nervous (counseling and treatment records are attached at Exhibit B).

Mr. Kurowski attended school in Cheektowaga, NY, and graduated from high school. It would appear form the Report and supporting letters attached that Mr. Kurowski was an above-average student. His interests were in theatre and music.

It appears from the descriptions in the attached letters that Mr. Kurowski has always been over-sensitive and somewhat raw emotionally. He is not necessarily athletic nor did he ever feel he was popular in school. It appears from the letters that Mr. Kurowski felt increasingly alienated as he grew older through his school years. He seems to be giving a description that is not atypical for adolescent males who feel rejected and not popular.

Mr. Kurowski seems to be describing a shift towards a greater lack of self-esteem and isolation as he passed through adolescence (*see* counseling and treatment records attached as Exhibit B).

It should be noted that this seems to be amplified by his relationship with his father, which he describes as strained because he was not a "jock" like his father wanted him to be.

Mr. Kurowski reported to counsel that he only had one serious girlfriend, to date.

He graduated from JFK High School in Cheektowaga and then went to the University of Buffalo. Mr. Kurowski's mother is an athletic director at the University of Buffalo. His father is a "stay-at-home father."

Mr. Kurowski reports that his feeling of isolation and lack of self-esteem increased at University of Buffalo. This, again, in not atypical. Mr. Kurowski continued to live at home with his parents (he describes the atmosphere in his letter) and commuted to the University of Buffalo. Mr.

Kurowski further describes in his letter that had problems making friends at the University of Buffalo and continued to feel isolated, nervous, anxious, and emotional. Again, not a typical. The University of Buffalo is a huge school where commuters often feel left out. Especially those with the emotional makeup and background of Mr. Kurowski.

This was all amplified because Mr. Kurowski, interestingly, had a girlfriend of his own age prior to entering college. This girl evidently broke up with him the first week of school. The counseling and psychological records detail the impact of this break up on Mr. Kurowski. The fact the Mr. Kurowski had a girlfriend of his own age should shed some light on the entirety of his makeup.

Mr. Kurowski has no problem working. It would appear both from the Report and from discussions with him and his family, that he has always had some form of part time job since he was legally allowed to work.

There is reference in the report to a job at the Apple Store in the Galleria Mall. It is important to note that it is defense's positon that the Report inaccurately describes Mr. Kurowski's termination from that position, The Report seems to leave open a conclusion or inference that Mr. Kurowski was terminated due to some act of sexual harassment or discrimination. This is not that case. He quite frankly, does <u>not</u> seem capable of that type of confrontation, Bravado, or arrogance.

Mr. Kurowski got into an argument with a customer and was explaining the confrontation to another worker in the hall of the mall in a loud tone of voice. During that conversation, Mr. Kurowski unfortunately used a racial epithet that was overhead by the customer. The customer complained to management and Mr. Kurowski was terminated.

In speaking to Mr. Kurowski about the incident, he is completely embarrassed by the use of the racial epithet, and says he was more emotional that angry and lost emotionally control of himself.

4

Mr. Kurowski's letter, along with his mother's letter seem to indicate that Mr. Kurowski began to severely breakdown emotionally during his last years at the University of Buffalo. At some point in time, he had asked both a friend and his mother to help him in seeking out counseling. His mother and Mr. Kurowski both describe the time period consistently. Mrs. Kurowski seems to indicate that she felt that she let her son down and that this was the beginning of his most severe emotional and anxiety ridden times.

Perhaps, this is what led to his internet "retreat."

Throughout Mr. Kurowski, his mother, and other supporters' letters (Exhibit C), there is no indication that Mr. Kurowski has ever acted inappropriately sexually or otherwise toward anybody of an inappropriate age. Quite the opposite—It would appear that Mr. Kurowski is being described as a social introvert who is sheepish, shy, and had very low self-esteem and is afraid of rejection in real interpersonal relationships, but was always appropriate and helpful to younger relatives.

Again, it seems as though Mr. Kurowski has always been appropriate in live, intimate situations and that his only relationship on a "real" interpersonal level was with a high school girlfriend that was of appropriate age. This is not consistent with somebody that is a Pedophile, especially, given Mr. Kurowski's young age.

He was a successful academic student, thrived in music and theater, and graduated from college.

Unfortunately, this seems to be a common trend amongst young men of his generation. Many of them are over-emotional "mama's boys" who are afraid of rejection and hide behind a computer screen. Like many parents, it appears that Joseph's parents chastised him and/or let him get away with not growing up, which compounded his isolationism and self-esteem issues.

B.      CRIMINAL HISTORY

Defendant, Joseph Kurowski, has no arguments with the contents of the Report as it pertains to his criminal history.

Joseph does not even have a Speeding ticket.

The Probation Department, the Federal Bureau of Investigation, and the United States Attorney's Office did not uncover one previous act (before or after his computer addiction) that was indicative of him being a predator or pedophile.

Mr. Kurowski was not found in possession of any movies, magazines, or the like. All of his criminal conduct related to computer interaction on a chat site where there was interaction from another individual who was also participating in the conversation and prompting responses.

# IV. INSTANT OFFENSE

It appears that the Report condenses a nine-month period of Joseph's internet and smart phone activity by pulling out only portions of the entirety. In his letter, Joseph details why, and how, he ended up on interactive websites. He did not initiate this addiction with the intent or motive of seeking out underage girls. Loneliness fueled the behavior.

There is no indication from his background or the current investigation that Joseph was exhibiting pedophilia prior to engaging in the internet social media encounters. Joseph's letter is an honest rendition as to why he sought out interaction on the internet. It is further supported by a full review of the psychological and treatment records (Exhibit B).

It was because of a lack of self-esteem, a fear of rejection, and loneliness. Frankly, he felt he was a 22-year-old "loser" and wanted to change that. In retrospect, immature and silly.

Unfortunately, in this day and age, this is not uncommon. What is further not uncommon is that people get addicted to this form of communication and abandon real life interaction and relationships. This appears to be what happened to Joseph Kurowski. There are thousands of people hiding behind computer screens and "being something they are not," because there is no real contact or repercussions when one speaks or communicates on a computer.

According to Mr. Kurowski, for a 10-11 month period, he was on the computer every night engaging in multiple conversations with multiple individuals. This would mean that there were hundreds of people that were spoken to, and thousands of conversations, Mr. Kurowski has intimated that many of the conversations became very personal and sexual. The huge majority was with people who "claimed" they were of age. But in fact, who will really know? The participant's real age when using this form of communication is always questionable.

Believably so, Mr. Kurowski indicates that he felt comfortable saying things on the internet that he would never say in person. Due to his lack of self-esteem and fear of rejection and anxiety, Mr. Kurowski found another world where he was comfortable without having to be in another person's actual presence. He was not afraid to say what he wanted. Unfortunately, this became addictive and caused him to lose his moral compass. He does not deny that he was informed of the girls' ages, referred to in the Report. Nor, does he deny continuing to have the conversations or continuing the behavior after he was informed of their ages.

Again, the contents of the Report detail the worst of Mr. Kurowski's conduct on the internet and

smart phone.

Still, Mr. Kurowski accepts complete responsibility for the conversations and other interaction detailed in the Report and does not deny them in any fashion.

In reality, however, Joseph was so addicted to the computer and the websites that he does not have distinctive memory of all of the people he spoke to and all of the conversations. Suffice it to say, that in reading these conversations, it does refresh his recollection, and he does not deny them. He understands the illegality of them and the moral and social problems with them. In the section of this Statement titled, "Psychological and Treatment Reports," I will address the misunderstanding that Mr. Kurowski did have upon his initial arrest and arraignment.

It is important to note that other than internet chatter, Joseph did not get caught with any pornographic movies depicting children, nor was he found with any photographs or magazines or the like. Further, he did not engage in the communications on the websites with the intent of seeking out children.

In total, considering the whole of his internet addiction, he was addicted to speaking with *anyone* and speaking about *anything*, including sex. It would appear, that much like a drug or alcohol addiction, he was fulfilling a need and ignored all mores that he was violating in fulfilling his need—Common with addicts. However, the need was not to speak to young children, but rather to engage in conversations with anyone in a fashion that he was not capable of in person. Cowardice.

Obviously, we take issue with the inference in the Report that Mr. Kurowski is a Pedophile or engaged in the behavior with the sole purpose of seeking out juveniles in a predatory fashion.

This is the basis for our Objections to the Report.

However, the need was not to speak to young children, but rather to engage in conversations with anyone in a fashion that he was not capable of in person.

We take issue with the Report's inference that Mr. Kurowski is a pedophile or engaged in the behavior with the sole purpose of seeking out juveniles in a predatory fashion. Not only does the Report refer to several "victims" that were not included in the plea and are not part of any relevant conduct section, but the Report also refers to counts in the Complaint that Mr. Kurowski was given the "benefit" of avoiding by this plea (see page 16, para. 68). There were, in fact, three young ladies amongst many conversation participants that were grossly underage (those in the Report). However, there was a much larger picture to be drawn. Who were the multitude of others that he spoke to that *were* of age? Furthermore, the young lady who was referred to in the Plea Agreement was just short of her eighteenth birthday while Mr. Kurowski was only 22. We cannot distort the entirety of Mr. Kurowski's situation and behavior. To do so distorts his motivation and the true nature of his offense.

Again, Mr. Kurowski was a 22-year old. An overgrown child. He was isolating himself, he was emotionally immature, and was socially immature. He has only been in one serious, romantic relationship in his life and it was with a girl of his own age who broke his heart. He then hid behind a computer screen.

The conduct described in the Report is only a miniscule portion of his overall activity on the computer over a nine-month period. Heinous to a large degree, but there was more to it, and consideration must be given to the entirety, and to who he was, to understand the nature of the offense.

9

# V. PSYCHOLOGICAL AND TREATMENT REPORTS

Attached as Exhibit B, are several different reports. Mr. Kurowski has engaged in both mandatory counseling via pre-trial release, and voluntary counseling for his own good. Therefore, there are reports from several different providers.

The reports are attached chronologically and addressed here chronologically.

It is important to note that because of Mr. Kurowski's young age and lack of experience, he initially had a hard time understanding what he was technically being charged with. In speaking to him, care had to be taken so that he would understand that he was not being charged with possession of what is usually considered pornographic materials, i.e. magazines, movies, and the like. Quite frankly, his parents shared some of the misunderstanding. It was difficult as a legal practitioner to get the Kurowskis focused on the internet behavior, the federal statutes, the elements of the statutes, and how they applied to Joseph's internet behavior. His parents continually questioned whether the girls sent similar picture to anyone else. To which I had to explain, "That's not the point!"

In Joseph's initial interviews with professionals, he was denying the "possession" of "pornographic" material. Within several months, however, he came to understand the actual technicalities of the charge, i.e. that the conversations and photographs being exchanged over the internet were the subject. Therefore, he initially denied possession of pornography. He now understands the broad definition of pornography as it applies here.

It should be further noted that defense counsel instructed Joseph not to speak, specifically, about any photograph or conversation when talking to a professional, that was, in my estimation, an arm of the prosecution; in the event he decided to go to trial.

A:      MID-ERIE COUNSELING AND TREATMENT SERVICES

The Mid-Erie records are those that were generated as a result of Joseph's referral through Pre-Trial Probation Services. A review of those records substantiates the background of Mr. Kurowski that has been previously outlined. The records detail his social anxiety, depression, and other deficiencies.

In a usual test of veracity, one checks to see if an individual's "story" remains consistent.  A review of these records would indicate that statements made in this writing were not just the "spin of a defense attorney" but in actuality, were substantiated by interviews with professionals.

The Mid-Erie records detail that Joseph reported having anxiety since he can remember. They further detail anxiety and panic attacks that became so bad he would uncontrollably cry, have a heavy chest, and hyperventilate.

The Mid-Erie records further indicate that Joseph was, in fact, diagnosed with Trichotillomania.

His increasing depression and social isolationism is further detailed. His episodes of Narcolepsy are detailed, as are the medications that were prescribed for the disorder. It appears from the report that the Narcolepsy was so bad that he may have been having hallucinations. One of the more troubling aspects of the Mid-Erie records is the disclosure that Joseph has had feelings of self-worthlessness, that he has considered suicide and hurting himself. The report refers to a diagnosis of "Persistent Depressive Disorder, Trichotillomania, and Generalized Anxiety Disorder." Nowhere in the report is there any suggestion the Joseph is a Pedophile.

There are two portions of the report that should be addressed:

First, initially in the report there is a notation that Joseph denied the charges. We ask that you consider that at the time, as the report indicates, he simply believed he was being charged with the possession of child pornography and did not understand the total concept of the charges

against him. He has never denied that he had sexual conversations on the computer or exchanged photographs. Further, there is indication in the report that Joseph has a history of sexually acting out, pornography, sex crimes, etc. It is obvious that this is a reference to the charges herein. There is no detail in the reports of any other form of sexual misconduct.

Secondly, Joseph is not an alcoholic, he is not abusing drugs, nor has he ever used any narcotics or other drugs.

B:      REPORT OF MAUREEN GRAHAM, PMHMP-BC

At the suggestion of defense counsel, Mr. Kurowski engaged in his own individual counseling outside of those that were mandatory through pre-trial release. This was done because Mr. Kurowski felt he was not truly getting help that was geared toward him bettering himself and his problems. Mr. Kurowski initially saw a professional, Ashlee Rudolph, LMHC, who would act as his counselor. However, she also referred Mr. Kurowski to Maureen Graham.

In the semantics of her profession, Ms. Graham details that Mr. Kurowski was, in fact, suffering from Anxiety and Depression and also details an Adjustment Disorder and low self-esteem and self-hatred. Ms. Graham gets Mr. Kurowski to disclose that his social anxiety got to the point where he would experience nausea and have loose stools.

She further uncovers that Mr. Kurowski seems to exhibit Obsessive Compulsive Disorder, which explains his constant need to be on the computer and explains his persistent behaviors.

Notably, Mr. Kurowski denied looking at child pornography (outside of the images sent to him on the computer) and denies any history of similar offenses. He further stated that he is heterosexual and prefers girls close to his age.

In reviewing her report with Mr. Kurowski, again he indicates that the reference surrounding child pornography, to him, was a reference to pornographic magazines, movies, and the like.

12

Further, Dr. Graham makes mention of his denial of soliciting sex. Mr. Kurowski intimates that he believed that he was being asked if he ever attempted to pay a prostitute.

The report details Mr. Kurowski's problems with Narcolepsy and the hallucinations that went along with it.

Again, most importantly, we ask the Court to look at the diagnostic impression. Dr. Graham diagnoses Mr. Kurowski with General Anxiety Disorder, Depression NOS, Adjustment Disorder mixed with emotions, OCD traits, Narcolepsy and Personality Disorder not otherwise specified. There is no mention of Mr. Kurowski being diagnosed as having any sexual disorder linked to Pedophilia.

        C:      REPORT OF ASHLEY RUDOLPH, LMHC

This letter seems to be more in the form of a synopsis of ongoing treatment that Joseph has gone through during the course of then pendency of the case.

Again, Ms. Rudolph verifies the background set out earlier in the Report.

We believe that this report is of significant importance because it details the positive effects that treatment has been having on Joseph, which is amplified by his own letter.

As we have previously, and continue to state, Joseph is not a Pedophile. He suffers from various other psychological and emotional disorders that fueled an internet addiction and illegal behavior associated to the internet. It also would appear that continued treatment in the community would prevent any further digressions.

It would appear from Ms. Rudolph's report that Joseph has made great strides in his treatment. It would appear that if he continues in treatment, the prognosis for avoided repeated behavior is good. He does not appear to be on the road to engaging in similar behavior again. This was a lack

of judgment and impulsive behavior, not necessarily deviant and in compliance with a sexual disorder.

# VI. PLEA AGREEMENT

The Plea Agreement calls for a guideline sentence and the Defendant, according to the Plea Agreement, was afforded the ability to request a non-Guideline sentence. We are doing so.

In arguing for a non-Guideline sentence, Defendant requests that the Court look closely at Mr. Kurowski's lack of criminal history, lack of evidence that he is a Pedophile, consider his age and personal circumstances and relate his psychological assessments to the nature of his offense.

Mr. Kurowski was an immature, maladjusted young man, needed treatment (but not for Pedophilia), which he us now receiving as a result of this case. Unfortunately his cries for help previously went unanswered.

The Plea Agreement was structured with Mr. Kurowski's circumstances in mind.

# VII. PRESENTENCE INVESTIGATION REPORT

The Defendant, Joseph Kurowski, has filed Objections to the Presentence Investigation Report. Because of Mr. Kurowski's background, personal disposition, and the entirety of his computer activity, a plea was negotiated that would attempt to not only avoid a ten-year mandatory minimum but would allow for a sentence that would more appropriate to his personal circumstances.

Thus, a paragraph was purposely included in the Plea Agreement wherein the Defendant could ask for a non-Guideline sentence that particularly fit him, the circumstances of his conduct, and his need for punishment as opposed to treatment.

Again, in negotiating the Plea Agreement, the parties attempted to structure an Agreement that would:

      a)      Allow for a specific Guideline range;

      b)      Take the Defendant out of a mandatory minimum sentence of ten (10) years; and,

      c)      Allow for both parties to recommend a sentence outside of the Guidelines.

For purposes of disposing of the case via negotiated plea the parties agreed that the Defendant would plead guilty under 18 USC 2252(A)(a)(5)(B), Possession of Child Pornography (*see* paragraph 1).

This particular section was chosen solely for the purposes of a Plea Agreement and disposing of the case. Neither party intended this to be a complete and direct reflection of Mr. Kurowski's criminal behavior. Quite frankly, the Possession of Child Pornography is not a complete description of Mr. Kurowski's behavior.

However, in order to avoid mandatory minimums and place the Defendant in the proposed Guidelines range, it was agreed that the Defendant would be sentenced pursuant to Sentencing Guideline 1B1.1(2)(a) as though he was convicted of 18 USC 2422(B).

Again this was added to the Agreement for the purposes of avoiding the mandatory minimum sentence and placing the Defendant in the proposed Guideline Range that was eventually calculated.

Given the above, the agreed upon base offense under the Sentencing Guideline 2G1.3(a)(3) would be 28.

Neither party intended to invoke a cross-reference to Sentencing Guideline 2G2.1(a), which would enhance the base offense level.

Instead the parties agreed that the base offense level of 28 would be adjusted, upward, two levels under 2G1.3(b)(3)(A) because the offense involved the use of a compute/cellphone to persuade or induce a minor to engage in prohibited conduct.

The use of this enhancement due to relevant conduct increased the base offense level by two levels from a 28 to a 30.

It is clear that the parties did not intend for the duplicitous use of Sentencing Guideline 2G1.3(b)(3)(A) and Sentencing Guideline 2G2.1.

Both the enhancement section and cross-reference section involve the same behavior, which creates increase in the base level, i.e. using a computer and/or cellphone to entice a minor to engage in prohibited conduct.

Further, the Plea Agreement contemplated that the Defendant would accept responsibility not only for possessing child pornography but also for enticing a minor into engaging in prohibited conduct. This is why the two level upward adjustment was included in the Plea Agreement.

It is the Defendant's contention that the Probation Investigation Report seems to be penalizing the Defendant twice for the same admitted conduct, i.e. allowing for the two-level upward adjustment and using the cross-reference to increase his sentence beyond what it would have been the mandatory minimum sentence prior to the Plea Agreement.

Although Defendant acknowledges that it was agreed that the Sentencing Guideline calculations in the Agreement are not necessarily binding, and that it is ultimately the Court's interpretation that is, Defendant requests that the Court adhere or give credence to the clear intent of the parties, reflected in the Plea Agreement.

The government and defense counsel succinctly negotiated a plea to specific United States Code

Sections and specifically attempted to structure a plea that would include specific Guideline references and ultimately a sentencing range.

The Defendant and the government herein chose a particular United States Code Section to avoid a 10-year mandatory minimum sentence

Therefore, both defense counsel and the government attempted to avoid any cross-reference that would increase the Defendant's sentencing range beyond 10 years, which the Pre-Sentence Report suggests.

## VIII. EVALUATIVE ANALYSIS AND DEFENDANT'S REQUEST SURROUNDING SENTENCE

The Court must consider all of the Section 3553(a) factors, make an individualized assessment based on the facts presented; Kimbrough v. United States, 552 US 85 (2007); Gull v. United States, 552 US 38 (2007); Nelson v. United States, 555 US 350 (2009). The Court must also explain how the facts relate to the purposes of sentencing; Pepper v. United States, 131 S.Ct. 1229 (2011). The Court's overreaching duty is to impose a sentence sufficient, but not greater than necessary to accomplish the goals of sentencing.

Mr. Kurowski herein requests that the Court not follow the Probation Department's Pre-Sentence Report recommendation surrounding the cross-reference to Sentencing Guideline 2G2.1(A).

Further, Defendant Kurowski request that the Court consider a non-Guideline sentence that accounts for and accurately reflect the nature and circumstances of the offense, his history and characteristics, and is sufficient but is not greater than necessary to serve the purposes of sentencing set forth at 18 USC 3553a(2).

We believe that we have, above, sufficiently laid the groundwork for the Court to structure a

17

sentence that accurately reflects Mr. Kurowski's background, what led to the offense, the offense itself, and his prognosis for further treatment.

Although both the Pre-Sentence Investigation Report and Plea Agreement call for jail time, it is Defendant's position that said sentence would serve no further purpose. Therefore, Mr. Kurowski is requesting Probation and continued treatment.

# IX. LEGAL ARGUMENT

As previously stated, the Guideline computations in the Report call for a sentence of between 70 and 87 months.

The Defendant, as part of the Plea Agreement, reserved the right to request a sentence outside of the Guideline range, pursuant to <u>Kimbrough v. United States</u>, 552 US 85 (2007); <u>Gull v. United States</u>, 552 US 38 (2007); <u>Nelson v. United States</u>, 555 US 350 (2009); <u>Pepper v. United States</u>, 131 S.Ct. 1229 (2011). The Defendant is requesting a sentence outside of the Guideline range.

We are requesting a sentence that would allow for home confinement, community confinement, or probation.

We feel that this would allow for an individualized assessment of the facts presented and would allow for a sentence sufficient but not greater than necessary to accomplish the goals of sentencing.

Here, we feel punishment via incarceration would not deter future criminal activity. Community based treatment is more appropriate.

Affirmed:      Buffalo, New York

March 7, 2017

Respectfully submitted,

/s/ Andrew C. LoTempio
Andrew C. LoTempio, Esq.
227 Niagara Street
Buffalo, NY 14201
(716) 842-2558
andrewclotempio@hotmail.com

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

v.

JOSEPH KUROWSKI,

                Defendant.
_____

              **AFFIDAVIT OF SERVICE**

       Docket no. 16-CR-94-LJV-MJR

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on, March 7, 2017, I electronically filed the foregoing Statement with Respect to Sentencing Factors with the Clerk of the District Court using its CM/ECF system, which would then electronically notify the following CM/ECF participants on this case:

Hon. Lawrence J. Vilardo
United States District Judge

Aaron J. Mango Esq.
Assistant United States Attorney

And via U.S. First-Class Mail to:
Lindsay Maza
United States Probation Officer
2 Niagara Square, Buffalo, NY

s/ Danielle S. Morgera